# IN THE COURT OF APPEALS OF IOWA

No. 13-1398
Filed May 29, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL GLEN RILEY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom,

Judge.


        A defendant appeals his conviction following his guilty plea, alleging his

attorney provided ineffective assistance by failing to file a motion to suppress.

**AFFIRMED.**


        Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.

        Michael G. Riley, Des Moines, pro se appellant.

        Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney

General, John Sarcone, County Attorney, and Andrea M. Petrovich, Assistant

County Attorney, for appellee.


        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

Michael Riley appeals his conviction following his guilty plea to possession of a controlled substance, second offense, in violation of Iowa Code section 124.401(5) (2013). He contends his plea was not knowingly and voluntarily entered because his attorney rendered ineffective assistance in failing to file a motion to suppress the evidence against him. He claims had his attorney filed the motion, all evidence against him would have been suppressed, and as a result, he would not have had to plead guilty. Because we conclude a motion to suppress would not have been granted if it had been filed, we find Riley's ineffective-assistance-of-counsel claims fails. We therefore affirm his conviction.

## I. Background Facts and Proceedings.

According to the minutes of testimony filed in this case, Officer Noble with the Des Moines Police Department was dispatched on a report of a "suspicious person." Upon arriving on the scene, Officer Noble met with two individuals who pointed out a man with no shirt on and stated the man "seemed to be tweaked out and acting funny." Officer Noble approached the man, who was later identified as Riley, and asked him what he was doing. Riley was unable to hold still while speaking with the officer, and Officer Noble had trouble understanding everything Riley was trying to say. Officer Noble believed Riley "was under the influence of a narcotic" based on his "training and years of experience."

When the officer inquired whether Riley had recently used any drugs, Riley responded that he had only had a beer. The officer asked if Riley had anything illegal on him, and after a brief pause, Riley responded, "No." Officer

Noble then asked if Riley had any weapons on him, and Riley admitted to having a pocket knife. Officer Noble instructed Riley to place his hands on his head so that Officer Noble could check to make sure he did not have any weapons. Before Officer Noble could check Riley's pockets, Riley put his right hand into his jeans pocket. Officer Noble removed the hand from the pocket and instructed Riley to place his hand back on his head. Officer Noble was able to see a spoon and a piece of paper in Riley's right front pocket.

Riley would not hold still. Riley tried again to take his hands off his head, so Officer Noble instructed him multiple times to place his hands behind his back. Riley complied momentarily but then Riley pulled his left arm away, breaking the officer's hold. Riley failed to comply with further instructions to place his hands behind his back, and Riley spun toward Officer Noble with his right shoulder. Officer Noble responded by grabbing Riley and taking him to the ground. After being held on the ground, Riley finally complied with the officer's commands to place his hands behind his back, and the officer was able to place handcuffs on Riley.

A search of Riley's person was performed, and Officer Noble discovered a spoon with residue and a syringe in the front right pocket. He also found a folded up piece of paper with a crystallized substance that tested positive for methamphetamine.

Riley was charged with possession of a controlled substance, third offense. Under a separate case number, Riley was also charged with interference with official acts and possession of drug paraphernalia. He agreed

to a plea offer from the State to plead guilty to the lesser offense of possession of a controlled substance, second offense, and the State agreed to dismiss the other two charges. The parties agreed to the imposition of a two-year sentence, which would be consecutive to a parole violation sentence. Riley entered a written guilty plea, waiving his right to be present and requesting immediate sentencing. He admitted he possessed methamphetamine in Polk County and had previously been convicted of possessing a controlled substance. The court accepted the written guilty plea and sentenced him in accordance with the plea agreement.

Riley now appeals claiming ineffective assistance of counsel.

## II. Scope and Standard of Review.

We review ineffective-assistance-of-counsel claims de novo because such claims are based on a defendant's constitutional right to an attorney. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). While we normally preserve such claims for postconviction-relief proceedings, we will consider the merits of a claim on direct appeal so long as the record is adequate to address the claim. *Id.* We believe the record in this case is adequate to address Riley's claim.

## III. Ineffective Assistance—Motion to Suppress.

To prove counsel was ineffective, Riley must show counsel failed to perform an essential duty and he suffered prejudice as a result. *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). Both elements must be proved by a preponderance of the evidence, and the claim fails if either element is not proved. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). When the claim is

asserted in the context of a guilty plea, to establish prejudice, a claimant must show there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial. *Carroll*, 767 N.W.2d at 641.

While a guilty plea waives all defenses and objections not intrinsic to a plea, our supreme court has permitted a defendant to "challenge the validity of [the] guilty plea by proving the advice he received from counsel in connection with the plea was not within the range of competence demanded of attorneys in criminal cases." *Id.* at 642. There are now no categories of ineffective-assistance-of-counsel claims that cannot, as a matter of law, survive a guilty plea, though courts must now analyze each individual case to determine whether counsel breached a duty in advance of a guilty plea and whether the breach rendered the plea unintelligent and involuntary. *Id.* at 644.

Riley claims counsel breached a duty by failing to file a motion to suppress the evidence seized as a result of his encounter with Officer Noble. Because counsel does not have a duty to raise a meritless issue, the resolution of Riley's ineffective-assistance claim requires us to determine whether Officer Noble violated Riley's constitutional rights against unreasonable searches and seizures. *See id.* at 645.

Searches conducted without a warrant are per se unreasonable unless an exception to the warrant requirement applies. *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997). One of the well-established exceptions is a *Terry*[1] stop, where

---

[1] *See Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).

an officer is allowed to "stop an individual . . . for investigatory purposes based on a reasonable suspicion, supported by specific and articulable facts, that a criminal act has occurred or is occurring." *Id.* The reasonable suspicion inquiry is based on an objective standard: "whether the facts available to the officer at the time of the stop would lead a reasonable person to believe that the action taken by the officer was appropriate." *Id.* The officer "must be able to point to 'specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (citation omitted). The evidence justifying the stop need not rise to the level of probable cause; the "officer may make an investigatory stop with 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Id.* at 642 (citation omitted).

Riley does not challenge Officer Noble's initial contact with him, stating it was "consensual in nature." He claims however, that Officer Noble's commands and physical actions resulted in an encounter that was no longer consensual, and Officer Noble needed specific and articulable facts to justify further detention. We conclude Officer Noble had such specific and articulable facts in this case to justify the *Terry* stop. Witnesses at the scene told the officer upon his arrival that Riley "seemed to be tweaked out and [was] acting funny." When answering questions by the officer, Riley was unable to hold still, and the officer had trouble understanding what Riley was trying to say. Based upon his discussion with Riley, Officer Noble believed Riley was under the influence of some narcotic based on his training and experience. Officer Noble inquired of Riley whether he

used any narcotics or had anything illegal in his possession. Riley paused before answering no to the later question.

The officer also inquired whether Riley had any weapons, and Riley admitted to having a pocket knife. Riley contends on appeal that the fact he volunteered the information regarding his possession of the knife somehow should have prevented the officer from conducting a *Terry* pat down for weapons. We conclude just the opposite. Officer Noble believed Riley was under the influence of a narcotic, he was acting erratically, and he admitted to having a knife in his possession. Officer Noble was justified in conducting a pat-down search in order to secure the knife, and any other weapon Riley may have in his possession, for the officer's safety and the safety of the surrounding public. It was when the officer attempted to conduct the pat-down that Riley failed to comply with instructions and actively resisted the officer's attempts. "The right to make an investigatory stop 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *State v. Dewitt*, 811 N.W.2d 460, 468 (Iowa 2012). "Generally, physical force to detain a suspect is reasonable when the suspect refuses to stop when ordered to do so." *Id.* at 473. Riley repeatedly refused to comply with the officer's directions to keep his hands out of his pocket, and Officer Noble acted reasonably in ensuring compliance through the use of reasonable force.

Riley claims when Officer Noble wrestled him to the ground and placed him in handcuffs a "de facto arrest" occurred requiring Officer Noble to have probable cause that Riley had committed a public offense. We disagree.

Wrestling Riley to the ground and the use of the handcuffs was necessary in this situation for Officer Noble to conduct the pat-down search. It did not amount to an arrest requiring probable cause. *See id.* (concluding the officers' seizing the defendant's arm, tackling the defendant to the ground, and handcuffing the defendant was a reasonable *Terry* seizure).

Because we find the seizure and pat-down of Riley was a reasonable *Terry* stop and frisk and that the officer acted reasonably, Riley's attorney was not ineffective in failing to file a motion to suppress before Riley entered his guilty plea. Riley's claim fails, and his conviction is affirmed.

**AFFIRMED.**